**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

SASAN SAHILI,

     **Plaintiff,**

v.                             **Case No.  8:26-cv-1593**

**NEW PORT RICHEY- H, LLC
D/B/A HYUNDAI OF NEW PORT
RICHEY AND LITHIA MOTORS,
INC.,**

     **Defendants.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff Sasan Sahili ("Sahili" or "Plaintiff"), by and through undersigned counsel, and files this Complaint and Demand for Jury Trial against New Port Richey-H, LLC d/b/a Hyundai of New Port Richey ("Hyundai") and Lithia Motors ("Lithia")(collectively, "Defendants"), and alleges as follows:

### PARTIES

1. Sahili is an adult over the age of 18 years who is competent to bring legal claims and is thus *sui juris*.

2. Sahili is a resident of the State of Florida who permanently resides in Pinellas County, Florida.

3. Upon information and belief, Hyundai is and has been at all relevant times, a Florida limited liability company with its principal place of business at 3936 US Highway 19 New Port Richey, Florida 34652.

4.      Upon information and belief, Lithia is and has been at all relevant times, a corporation with its principal place of business at 150 N. Bartlett Street, Medford, Oregon 97501.

## JURISDICTION AND VENUE

5.      This is an action under federal and Florida state law; specifically, the Family and Medical Leave Act of 1993 ("FMLA")[1] and the Florida Whistle-Blower's Act ("the Act")[2].

6.      This Court has federal question jurisdiction over the FMLA claim pursuant to 28 U.S.C. § 1331.

7.      This Court has supplemental jurisdiction over the Florida state law claim, as the claim arose out of the same nexus of operative facts as the federal claim.  28 U.S.C. § 1367.

8.      Venue is proper in the United States District Court, Middle District of Florida, pursuant to 28 U.S.C. § 1391(b)(2) as the events or transactions out of which this claim arose occurred in Pasco County, which is located within the Middle District of Florida.

9.      Thus, the Tampa Division is the proper division.  M.D. Fla. Loc. R. 1.04(a).

---

[1] 29 U.S.C. § 2601 *et seq.*
[2] Fla. Stat. § 448.101 *et seq.*

## GENERAL ALLEGATIONS

10.    Hyundai is a car dealership.

11.    Sahili's most recent job title was "Finance and Insurance Manager," ("F&I Manager") a position he held since 2019.

12.    During his work at Hyundai, Sahili has been a consistently high-producing employee.

13.    In fact, Sahili was the top finance manager in the finance department at the local level, and earned his place at a national level as one of Lithia's "F&I Elite Producers" multiple times in his career.

14.    By contrast, Sahili's co-worker, Steven Ledesma ("Ledesma") was unable to succeed as an F&I Manager without engaging in unethical and potentially unlawful behavior.

15.    Since the time Ledesma joined the Hyundai team, Sahili observed that Ledesma was falsifying customer signatures on financing documents.

16.    Ledesma was also adding products and services to customer contracts without approval.

17.    Several customers, upon discovering the discrepancy, would cancel these add-ons.

18.    However, more often than not, Ledesma's unsavory sales practices flew under the radar and the undesired "add-ons" were not canceled.

19.    This behavior led to Ledesma's artificially and fraudulently inflated sales figures.

20. Although Ledesma had a longstanding history of fraudulent behavior, to the point that he had been banned from Morgan Auto Group, Hyundai cared more about the money Ledesma was bringing than the manner in which he did it.

21. Finance Director Fred Singleton ("Singleton") was also very aware of Ledesma's unlawful conduct, but took no corrective action.

22. In addition to engaging in unlawful practices via the fraudulent signatures, Ledesma also made rude, disrespectful, and vulgar comments toward Sahili.

23. David Frasier ("Frasier"), who was acting as a *de facto* general manager at Hyundai, was fully aware of Ledesma's conduct because Sahili did not tolerate any of this behavior in silence.

24. Indeed, Sahili raised his concerns about the multitude of Ledesma's sins to the local leadership at Hyundai.

25. Instead of remediating Ledesma's conduct, Sahili was penalized for reporting Ledesma's unlawful behavior.

26. Sahili saw sales opportunities dry up and chargebacks increase; his once robust $250,000 annual earnings decreased dramatically.

27. Sahili also experienced extreme emotional distress from the on-the-job stress caused by Ledesma's conduct, Hyundai's tolerance of the same, and Hyundai's penalization of Sahili.

28. In fact, the stress rose to such a high level, that Sahili had to take a medical leave of absence under the FMLA starting on or about August 15, 2024.

29.    To make matters worse, Sahili's emotional distress was mocked in front of several managers, including Frasier.

30.    Despite having direct awareness of this disability-based harassment, neither Frasier, nor any other member of management at Hyundai or Lithia, took corrective action to help protect Sahili.

31.    Instead, it appears that the Defendants' goal was to push Sahili to such a state of stress that he would have no option but to resign.

32.    Sahili also raised his concerns about Ledesma's conduct with Lithia Compliance and Relations, directly.

33.    Sahili felt he had no reasonable option but to resign on or about August 30, 2025.

34.    As a direct and proximate result of the Defendants' actions, Sahili has had to retain the services of counsel, for which is obligated to remit reasonable attorneys' fees and costs.

## INTEGRATED ENTERPRISE ALLEGATIONS

35.    Sahili received his wages from Hyundai.

36.    Sahili's benefits were provided by Lithia.

37.    The individuals who worked at Hyundai, such as Sahili and Frasier, had business e-mail addresses with the domain "lithia.com".

38.    Individuals who worked at the Lithia's headquarters in Oregon had business e-mail addresses with the domain "lithia.com".

39.    Additionally, Lithia is a managing member of Hyundai.

40. Therefore, the Defendants constitute a single, integrated enterprise with respect to ownership and operations, as evidenced by their centralized control of labor relations and common ownership, at minimum.

### COUNT I – FMLA RETALIATION

41. Plaintiff realleges and reincorporates the allegations contained in paragraphs 1 through 40, as if fully set forth herein.

42. Sahili was approved for, and took, leave under the FMLA for his own serious health condition from on or about August 15, 2024 to November 6, 2024.

43. The FMLA leave had become necessary due to the extreme emotional distress and mental anguish Sahili experienced on-the-job.

44. Thereafter, Sahili was retaliated against in several ways, from being subjected to insults and verbal abuse based on the medical conditions which necessitated the FMLA leave, losing commission potential and earnings, and having unexplained chargebacks taken from his pay.

45. The on-going harassment escalated until Sahili felt he had no reasonable option but to separate from his employment with the Defendants.

46. Thus, Sahili's separation from employment was not voluntary, but was the result of a constructive discharge.

47. The Defendants' actions were willful and not taken in good faith.

48. As a direct and proximate result of the Defendants' actions, Sahili has suffered damages including lost wages and benefits.

49. Such losses are ongoing and reasonably likely to continue into the immediate future.

WHEREFORE, Plaintiff Sasan Sahili respectfully seeks the following relief:

(a) Lost wages and benefits through the time of trial;

(b) Lost interest on the amount awarded in part (a);

(c) Liquidated damages on the amounts awarded in parts (a) and (b);

(d) Front pay;

(e) Reasonable attorneys' fees and costs; and

(f) Other and further relief as the Court deems just and proper.

## COUNT II – VIOLATION OF THE ACT

50. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 40, as if fully set forth herein.

51. Sahili engaged in protected conduct under the Act by objecting to and refusing to participate in the Defendants' actual violation of the Florida Deceptive Unfair Trade Practices Act[3] ("FDUTPA") via its approval of Ledesma's "unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of" car sales and financing.

52. To the extent there was not an actual violation of the FDUTPA, Sahili reasonably believed there was a violation of the FDUTPA.

---

[3] Fla. Stat. § 501.204 *et seq.*

53.     Sahili engaged in protected conduct under the Act by objecting to and refusing to participate in the Defendants' actual violation of the Combating Auto Retail Scams Trade Regulation Rule[4] ("CARS Rule") via its approval of Ledesma's "unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of" car sales and financing.

54.     To the extent there was not an actual violation of the CARS Rule, Sahili reasonably believed there was a violation of the CARS Rule.

55.     The FDUTPA and/or CARS Rule violations began with Ledesma's employment by the Defendants, and continued despite Sahili's objections to the same.

56.     Thereafter, Sahili was retaliated against in several ways, from being subjected to insults and verbal abuse based on the medical conditions which necessitated the FMLA leave, losing commission potential and earnings, and having unexplained chargebacks taken from his pay.

57.     The on-going harassment escalated until Sahili felt he had no reasonable option but to separate from his employment with the Defendants.

58.     Thus, Sahili's separation from employment was not voluntary, but was the result of a constructive discharge.

---

[4] 16 C.F.R. Part 463.

59.     As a direct and proximate result of the Defendants' unlawful actions, Sahili has suffered severe emotional distress and mental anguish, loss of the capacity to enjoy life, lost wages and benefits, and all damages are on-going and reasonably expected to continue into the indefinite future.

WHEREFORE, Plaintiff Sasan Sahili respectfully seeks the following relief:

(a)     Lost wages and benefits through the time of trial;

(b)     Pre- and post-judgment interest;

(c)     Compensatory damages for Sahili's emotional pain and anguish;

(d)     Front pay;

(e)     Reasonable attorneys' fees and costs; and

(f)     Other and further relief as the Court deems just and proper.

## JURY DEMAND

The Plaintiff demands a jury trial on all claims so triable.

Respectfully submitted this 29th day of May, 2026.

_/s/ Shaina Thorpe_____
**SHAINA THORPE**
Florida Bar No. 0055464
Primary: shaina@thorpelaw.net
Secondary: admin@thorpelaw.net

**THORPELAW, P.A.**
100 S. Ashley Drive, Ste. 600
Tampa, Florida 33602
Telephone: (813) 400-0229
Fax: (813) 944-5223

_Lead Counsel for Plaintiff Sasan Sahili_